TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 92-1204 |
| of | : | |
| | : | MAY 4, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

THE HONORABLE MICHAEL D. BRADBURY, DISTRICT ATTORNEY, VENTURA COUNTY, has requested an opinion on the following question:

Does a county grand jury have the authority to investigate and report on the fiscal and administrative operations of the executive officer of a superior court?

CONCLUSION

A county grand jury does not have the authority to investigate and report on the fiscal and administrative operations of the executive officer of a superior court.

ANALYSIS

The primary powers and duties of a county grand jury are set forth in Penal Code section 914 et seq. In addition to its duty to inquire into all public offenses committed in the county (Pen. Code, § 917), a grand jury is given certain "oversight" powers with respect to county, city, and district affairs. (Pen. Code, § 925 et seq.) Germane to our inquiry herein are Penal Code sections 925, 928, and 933. Section 925 provides:

"The grand jury shall investigate and report on the operations, accounts, and records *of the officers*, departments, or functions *of the county*, including those operations, accounts, and records of any special legislative district or other district in the county created pursuant to state law for which the officers of the county are serving in their ex officio capacity as officers of the districts. The investigations may be conducted on some selective basis each year, but the grand jury shall not duplicate any examination of financial statements which has been performed by or for the board of financial statements which has been performed by or for the board of supervisors pursuant to Section 25250 of the Government Code; this provision shall not be construed to limit the power of the grand jury to investigate and report on the

1                                                    92-1204

operations, accounts, and records of the officers, departments, or functions of the county. The grand jury may enter into a joint contract with the board of supervisors to employ the services of an expert as provided for in Section 926." (Emphasis added.)

Section 928 provides:

"Every grand jury may investigate and report upon the needs *of all county officers* in the county, including the abolition or creation of offices and the equipment for, or the method or system of performing the duties of, the several offices. Such investigation and report shall be conducted selectively each year. The grand jury shall cause a copy of such report to be transmitted to each member of the board of supervisors of the county." (Emphasis added.)

Section 933 provides:

"(a) . . . No later than the end of each fiscal or calendar year of a county, each grand jury impaneled during that fiscal or calendar year shall submit to the presiding judge of the superior court a final report of its findings and recommendations that pertain to *county government* matters other than fiscal matters during the fiscal or calendar year.

"(b) No later than the end of each fiscal or calendar year, each grand jury impaneled during that fiscal or calendar year shall submit to the presiding judge of the superior court a final report of its findings and recommendations that pertain to fiscal matters *of county government* during the fiscal or calendar year of the county . . . ." (Emphasis added.)

Accordingly, sections 925, 928, and 933 of the Penal Code contemplate an investigation of the administrative and fiscal operations of *county* officers and departments and reports thereon. We are asked herein whether this grant of authority encompasses investigating the executive officer of a superior court.[1] We conclude that it does not.

We need not belabor the point that both the superior court and municipal court are *state* agencies established pursuant to Article VI, sections 4 and 5 of the California Constitution. (See *County of Sonoma* v. *Workers' Comp. Appeals Bd.* (1990) 222 Cal.App.3d 1133, 1136-1137; 74 Ops.Cal.Atty.Gen. 190, 192 (1991); 74 Ops.Cal.Atty.Gen. 111, 114 (1991). However, despite this fact, we have previously concluded in several opinions that Penal Code sections 925, 928, and 933 empower a grand jury to investigate and report upon the activities of local judicial officers.

In 67 Ops.Cal.Atty.Gen. 519 (1984) we concluded that a grand jury had authority to audit the office of the Marshal of the Municipal Courts of Los Angeles County. We reasoned:

"Nevertheless, the county is not without responsibility and authority respecting the office of marshal. In Los Angeles County, the Board of Supervisors must provide suitable quarters including heating, lighting, janitorial services, furniture, books, and supplies necessary for carrying out the duties of the marshal. (§§ 72652, 71002, 68073.) Further, the salaries of the judges, clerks, marshals, and

_____

[1]The authority of a grand jury to investigate public offenses and misconduct in office (Pen. Code, §§ 917, 918, 919, 922; Gov. Code, § 3060) is beyond the scope of this opinion.

other officers or attaches of the municipal courts must be paid by the county in which the court is situated out of the salary fund or, if there is none, the general fund of the county. (§§ 71220, 72651; 56 Ops.Cal.Atty.Gen., *supra*, 321.) In addition to their salaries, the marshal, assistants, and deputies of municipal courts, except custodians, are allowed their actual and necessary incidental expenses incurred in the actual performance of their duties, including traveling expenses. (§§ 72111, 72651.)

"Upon such considerations it has been determined that officers and attaches of the municipal court may be considered for many purposes as employees of the county. (*Marin* v. *County of Contra Costa, supra*, 8 Cal.App.3d at 860; *Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 722-723; 64 Ops.Cal.Atty.Gen., *supra*, 270; 56 Ops.Cal.Atty.Gen., *supra*, 324-325.) We have previously concluded that the Marshal of Municipal Courts, County of San Diego, is one of the officers of the county subject to audit by the grand jury within the provisions of Penal Code section 925. (56 Ops.Cal.Atty.Gen. 41, *supra*.) It must be presumed that this interpretation has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted over the course of the intervening decade. (*California Correctional Officers' Assn.* v. *Board of Administration* (1978) 76 Cal.App.3d 786, 794; 67 Ops.Cal.Atty.Gen. 23, 26-27 (1984).) Consequently, it is concluded that the Los Angeles County Grand Jury is authorized to conduct an audit of the Office of Marshal of the Municipal Courts in that county." (*Id.* at p. 522, fns. omitted.)

In 56 Ops.Cal.Atty.Gen. 41 (1973), while concluding that the Marshal of the Municipal Court of San Diego County was subject to grand jury audit under section 925 of the Penal Code, we emphasized the fact that the county paid the salaries and expenses of the court. We stated: "It would be incongruous to give the marshal extensive authority, and to make the county responsible for his fiscal and physical support, without requiring commensurate accountability . . . ." (*Id.*, at p. 43.) We then concluded in summary:

"In view of the function and character of the grand jury, the local character and nature of the functions of the office of marshal, the analogous position of the sheriff, the constitutional history in creating the present municipal court districts, the absence of any infringement upon the judicial decision-making process, and the liberality with which statutes involving the investigatory powers of the grand jury are to be construed, it is concluded the marshal of San Diego County is a county officer for purposes of Penal Code section 925, and thus is subject to audit by the grand jury." (*Id.*, at p. 44.)

But for the changes in the trial court system since 1985, we would consider the foregoing opinions to be controlling on the question presented herein. However, we believe that recent statutory changes now dictate a different conclusion concerning a grand jury's powers to audit local court officers including the executive officer of a superior court.

Initially, we note that since 1976 (see Stats. 1976, ch. 1353) the superior court of any county has had the authority to appoint an executive officer pursuant to Government Code section 69898[2] and assign to him administrative duties and any of the duties of the county clerk as ex-officio clerk of the court. Such an executive or administrative officer is clearly an employee of the court.

---

[2]All subsequent code section references are to the Government Code unless otherwise indicated.

(See *Zumwalt* v. *Superior Court* (1989) 49 Cal.3d 167; *cf. Seidler* v. *Municipal Court* (1993) 12 Cal.App.4th 1229 [municipal court administrator].)

With respect to recent state funding legislation for the trial courts, the initial statutory scheme was the Trial Court Funding Act of 1985 (Stats. 1985, ch. 1607). Since then the trial courts have been undergoing significant reformation, with the funding legislation being amended in 1988 (Stats. 1988, ch. 945) and in 1992 (Stats. 1992, chs. 1199, 1369). With respect to trial court consolidation, the Legislature recently enacted the Trial Court Realignment and Efficiency Act of 1991 (Stats. 1991, chs. 90, 189). In our view, an examination of the provisions of these new laws leads to the conclusion that the Legislature intends for the "oversight" of superior and municipal courts and their functions to rest with the Judicial Council, the State Controller, and ultimately the Legislature itself.

It is beyond the scope of this opinion to attempt a detailed analysis of the foregoing new enactments. Suffice it to say that the purpose of the court funding legislation, now known as the Brown-Presley Trial Court Funding Act (§§ 77000-77400), is to shift the costs of operating the local court system from the counties to the state. Under the statutory scheme, counties which have adopted the provisions of the law, that is "option counties" (§ 77004), receive "block grants" from the state to support court operations for all trial courts (§§ 77001-77003).[3] As presently cast, section 77200 provides state money for 55 percent of the annual costs of a county's court operations for the 1992-1993 fiscal year, increasing 5 percent each year to 70 percent for fiscal year 1995-1996.

The principal reform of the second legislative scheme, the Trial Court Reorganization and Realignment Act, is contained in section 68112. It requires each superior, municipal, and justice court to prepare and submit to the Judicial Council a trial court coordination plan which, in essence, provides for (1) the cross-assignment of judges between courts of different jurisdictions within the county and (2) the consolidation of court operations to improve efficiency and reduce costs. (See also § 68505.)

These court reform laws include statutorily required audits and reports *to the state*. Section 77205 requires each county to submit detailed financial reports to the State Controller on court operations. (See also § 71383.) The State Controller in turn has audit responsibilities and in turn must make reports to the Legislature. Section 77205 provides:

"(a) An option county shall receive block grant disbursement from the state quarterly.

"(b) The Controller shall adopt appropriate regulations for recordkeeping, accounting, and reporting by an option county in order to determine all county revenues, including filing fees, fines, and forfeitures, and all expenditures relating to court operations.

"(c) The county shall submit to the Controller for each full fiscal year that the option county participates in the program, in the form and manner prescribed by the Controller, a report of all revenues, including filing fees, fines, and forfeitures, and all expenditures relating to court operations, for the prior 12-month period ending June 30. The report shall be submitted by each option county to the Controller on or before October 1 of the fiscal year following the reporting year.

---

[3]All counties in the state have in fact opted into the program.

"The Controller shall compile and submit to the Legislature reports of the financial transactions of each option county relating to court operations.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(e)  The Controller shall perform and publish financial and compliance audits of the reports submitted by option counties under this chapter for the first full fiscal year for each county opting under this chapter.  The Controller shall report the results of these audits to the Legislature."

As to local court administration programs, section 68113 requires each county to submit progress reports to the Judicial Council on its coordination plans, and the Judicial Council in turn must report its findings to the Legislature.  Section 68113 provides:

"(a)  The superior, municipal, and justice courts in each county shall submit a report to the Judicial Council on progress towards achieving the cost reduction goals associated with the coordination plans and factors impacting the cost of court operations and the collection of revenues.  The report shall also include financial information prepared by the county auditor on expenditures for court operations and revenues according to a uniform chart of accounts adopted by the Judicial Council. The reports shall be submitted quarterly on or before the first day of the third month following the end of the quarter, except the fourth-quarter report shall be submitted on the first day of the fourth month following the end of the fourth quarter.

"(b)  For purposes of the reporting requirements of this section, a court or courts in a county may petition the Judicial Council to permit division of the court or courts into smaller administrative units corresponding to the organization of the court or courts under a coordination plan where reporting courtwide would impose an undue burden because of the number of judges or the physical location of the division of the court or courts.

"(c) The Judicial Council shall submit a report to the Legislature on or before November 1 following the end of each fiscal year setting forth all of the following:

"(1)  The revenues and expenditures for each superior, municipal, and justice court in the state and statewide totals.

"(2)  A summary of the savings achieved by each county and statewide.

"(3)  Factors impacting the cost of court operations and the collection of revenues."

Finally, section 68520 requires each superior, municipal, and justice court to provide the Judicial Council with complete information regarding the number, classification, salary, and benefits of every officer and employee involved in "court operations" (§ 77003).

In view of the foregoing court reform laws, with their required reports and audits on administrative and fiscal affairs, we believe that our prior opinions discussed at the outset regarding sections 925, 928 and 933 of the Penal Code no longer reflect current law.  The Legislature has now placed trial court "oversight" duties in various state officers, the Judicial Council, and ultimately, in itself, as the process of court reform has evolved.  In so doing, the Legislature has removed the

local courts from being treated as county agencies for purposes of a grand jury's investigating and reporting on their fiscal and administrative operations.

Insofar as it may be urged that state audit and review should not preclude additional grand jury oversight by virtue of the county money still being contributed to the trial court funding program, we note that the state reports include such county funds and that a county board of supervisors may order its own audit and report pursuant to section 25250. (See also §§ 71010, 71383.) Section 25250 provides:

"At least biennially the board of supervisor shall examine and audit, or cause to be audited, the financial accounts and records of all officers having responsibility for the care, management, collection, or disbursement of money belonging to the county or money received or disbursed by them under authority of law. The audit shall encompass the immediately preceding two-year period, or any portion thereof not included in a prior audit. This financial examination or audit may be performed in coordination with the investigations conducted by the grand jury under Section 925 of the Penal Code, or the board of supervisors may resolve to accept reports delivered pursuant to Section 933 of the Penal Code in lieu of its own separate examination if such reports are found to fulfill some or all of the requirements of this section. In connection with the requirements of this section and Section 25253, the board of supervisors may employ the services of an independent certified public accountant or licensed public accountant to perform an examination of the financial statements in accordance with generally accepted auditing standards."

In short, we believe that the specific directives found in the court reform laws control the earlier and more general legislative grants of authority contained in Penal Code sections 925, 928 and 933. (See, e.g., *Woods* v. *Young* (1991) 53 Cal.3d 315, 324-325.) Stated otherwise, the grand jury no longer has oversight of the trial courts and their officers since that now reposes in state officers, the Judicial Council, and the Legislature itself. Treated as state agencies rather than county agencies for purposes of auditing their operations, the trial courts are outside the scope of Penal Code sections 925, 928, and 933.

In answer to the question presented, we conclude that a county grand jury does not have the authority to investigate and report on the fiscal and administrative operations of the executive officer of a superior court.

* * * * *