**William E. GREEN, Plaintiff,**

v.

**Keith R. HENLEY, and Mike Hayden, Governor, individually and in their official capacities, Defendants.**

Civ. A. No. 88–2231–O.

United States District Court, D. Kansas.

Nov. 13, 1989.

Frederick J. Patton, II, Patton & Patton, Topeka, Kan., for plaintiff.

Frank A. Caro, Jr., William Scott Hesse, John W. Campbell, Deputy Atty. Gen., Topeka, Kan., John W. Lungstrum, Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan., Wm. Scott Hesse, Asst. General Counsel, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendants' motions for summary judgment. According to the Pretrial Order in this case, plaintiff alleges that he was discharged from his job as administrator of the transportation division of the Kansas Corporation Commission ("KCC"), in violation of his rights of association and political activity under the First and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, Section 1983.

The relevant facts of this case are largely undisputed and may be summarized briefly. In June 1980, plaintiff was appointed to his position with the KCC by a Democrat. Plaintiff's job was, at all times, an "unclassified" position under Kansas law. K.S.A. 74-615. On or about January 21, 1987, plaintiff alleges that defendant Henley, the Republican chair of the KCC, informed plaintiff that defendant Hayden, also a Republican, wished to replace all division directors, including plaintiff. This change was to be within three months, and, indeed, plaintiff was replaced by a Republican on March 23, 1987. Defendants move for summary judgment on the basis that plaintiff's termination was justified by his poor job performance, that plaintiff's political party affiliation was an appropriate requirement for the effective performance of his job, and that they are entitled to qualified immunity.

In a motion for summary judgment, the movant need not negate the allegations of the nonmoving party. However, it must demonstrate that there is no genuine issue of material fact and is therefore entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986). This initial burden entails "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

When faced with a motion for summary judgment, the nonmoving party may not simply rely upon its pleadings but rather must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Indeed, "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The test is whether the facts, viewed in the light most favorable to the nonmoving party, are such that a court may conclude that a reasonable jury could find for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The Tenth Circuit recently enunciated the relevant inquiry in cases where the plaintiff alleges a patronage dismissal in violation of the First Amendment:

> the issue whether an employee was in a confidential or policymaking position is not controlling. Rather, the ultimate constitutional question is whether party affiliation is an appropriate requirement for the effective performance of the public office involved. And while the question whether a policymaking or confidential relationship is involved may be relevant, such categories are no longer dispositive. Moreover, the defendant must bear the burden of proof on the issue whether party affiliation ... was an appropriate requirement for the effective performance of the public office involved, under the *Branti* [*v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)] standard. The burden on the plaintiffs is to prove that their discharge or threat of discharge was for the reason that they were affiliated with [the "out" political party].

* * * * * *

The critical question whether a position is one where party affiliation is an appropriate requirement for the effective performance of the public office involved can be answered best by analyzing the nature of the employee's duties and responsibilities. In close cases, doubt should be resolved in favor of the public employee subject to the dismissal.

*Dickeson v. Quarberg,* 844 F.2d 1435, 1441–42 (10th Cir.1988) (citations and internal quotation marks omitted). Although defendants maintain that plaintiff was discharged for poor job performance, the court finds that plaintiff has met his burden of proving that his termination was the result of his association with the Democratic party. Accordingly, the inquiry turns to the appropriateness of defendants' reliance upon that association in deciding to terminate plaintiff.

The parties do not cite, and the court has not discovered, decisions addressing the precise factual situation presented in the case at bar. However, two recent cases are closely analogous. In *Bicanic v. McDermott,* 867 F.2d 391 (7th Cir.1989), plaintiff, the former Administrator of Parks and Recreation of the City of Hammond, Indiana, alleged that the Mayor of Hammond discharged him due to his political party affiliation. In rejecting plaintiff's claim that said discharge was in violation of the First Amendment, the court stated that

> The political officials must be able to count on the support of those who prepare budgets, negotiate and sign contracts, and generally run the show at a substantial component of the government. The [Park and Recreation] Commission had the last formal word on some of these subjects, but members of the President's cabinet may be political appointees notwithstanding their formally subordinate status on the organization chart of the executive branch; so too with responsible subordinates in the City of Hammond.

*Id.* at 394 (citation omitted). Similarly, the First Circuit, in *Roman Melendez v. Inclan,* 826 F.2d 130 (1st Cir.1987), upheld the patronage dismissal of a Regional Director of the Puerto Rico General Services

Administration on the basis that the plaintiff's duties made political party affiliation an appropriate requirement for continuing in that position. Among the duties in *Roman Melendez* were the implementation of policies established by the General Services Administrator, directly and indirectly supervising large numbers of employees, and formulating the annual budget for his region.

Plaintiff in the case at bar is like the plaintiffs in both *Bicanic* and *Roman Melendez* in an important respect: he represented the "front line" in the interpretation and implementation of important policies set, in the first instance, by elected officials and their direct appointees. As the court stated in *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987):

> In order for the new administration to be given an opportunity to fulfill expectations, it must have available and also appear to have available significant facilitators of policy, people who have the personal and partisan loyalty, initiative, and enthusiasm that can make the difference between the acclaimed success of a government agency or program and its failure or, more typically, its lackluster performance.

*Id.* at 241.

In the instant case, defendants have met their burden under *Dickeson*. In so holding, the court relies heavily upon both the formal job description of plaintiff's position and plaintiff's own resume of experience while at the KCC (Exhibits B and C, respectively, of Defendant Henley's Memorandum in Support of Motion for Summary Judgment). While all of plaintiff's duties need not be recited in detail, both documents reflect that plaintiff was expected to have and, by his own account, did have a significant amount of responsibility for analyzing current transportation regulations, testifying before the Kansas Legislature on regulatory matters, and developing poli-

cy for the transportation division. Moreover, plaintiff coordinated his division's activities with other state agencies and spoke on behalf of the transportation division to the public and media (Exhibits G, I, and GG, Memorandum in Support of Defendant Hayden's Motion for Summary Judgment). The court finds that political party affiliation is an appropriate requirement for the effective performance of these duties.

In an affidavit in support of his response to defendants' motions, plaintiff attempts to minimize his job responsibilities, arguing that he was without ultimate policymaking authority. As the court noted in *Dickeson*, however, "while the question whether a policymaking or confidential relationship is involved may be relevant, such categories are no longer dispositive." *Dickeson*, 844 F.2d at 1441. Indeed, following plaintiff's logic, no appointed official within the executive branch would be subject to patronage dismissal, because the governor is the only policymaker with ultimate authority in that branch.

 While the court finds no merit in plaintiff's First Amendment claims, we also hold that defendants are entitled to qualified immunity from liability for damages.[*] In *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642 (10th Cir. 1988), the court stated that,

> When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established constitutional rights of which a reasonable person would have known. In deciding whether the law that the defendant allegedly violated was clearly established, the court will examine the law as it was at the time of the defendant's actions.
>
> The plaintiff carries the burden of convincing the court that the law was clearly established. In meeting its burden under *Lutz [v. Weld County School*

---

[*] Plaintiff is correct that immunity under the Eleventh Amendment does not extend to requests for injunctive relief. *See Duran v. Carruthers*, 885 F.2d 1485 (10th Cir.1989). However, the court finds that reinstatement of plaintiff to his former position is neither warranted nor feasible.

**586**

*Dist.,* 784 F.2d 340 (10th Cir.1986)], a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Id.* at 645 (citations and internal quotation marks omitted). Other courts addressing the issue of qualified immunity in patronage dismissal cases recognize that the inquiry under *Branti, supra,* is necessarily quite fact-specific. For example, in *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255 (1st Cir.1987), the court held that

Rather than ask generally whether it was clearly established that the first amendment is implicated in this sort of case, the district courts should have considered whether it was clearly established that employees in the *particular positions* at issue, in light of the responsibilities inherent in those positions, were protected from patronage dismissal.

*Id.* at 1259 (citation omitted, emphasis in original). Thus, plaintiff must show that, at the time he was terminated, the law clearly protected the administrator of the transportation division from dismissal on the basis of party affiliation. In passing upon this question, the court must look beyond the facts alleged in the complaint and, "consider in the light most favorable to the plaintiff all undisputed facts discernible from the pleadings and other materials submitted to supplement them by the time the motion for summary judgment is made." *Devargas v. Mason & Hanger–Silas Mason Co., Inc.,* 844 F.2d 714 (10th Cir.1988).

Plaintiff has failed to meet his burden of showing that defendants violated any clearly established Constitutional right in terminating him. Indeed, the court has discovered no decision in which a government official has been denied qualified immunity in a patronage dismissal case involving a high-level administrator such as plaintiff. Thus, at the very least, the law governing plaintiff's discharge was not clearly established in his favor when defendants acted. Accordingly, summary judgment in defen-

dants' favor on the basis of qualified immunity is appropriate as well.

IT IS THEREFORE ORDERED that the motions for summary judgment of defendants Henley and Hayden are granted.