**William E. GREEN, Plaintiff–Appellant,**

**v.**

**Keith R. HENLEY; Mike Hayden, Governor, Individually and in their official capacities; The State of Kansas; the State Corporation Commission, Defendants–Appellees.**

**No. 89–3332.**

United States Court of Appeals, Tenth Circuit.

Jan. 25, 1991.

Frederick J. Patton, II of Patton & Patton, Topeka, Kan., for plaintiff-appellant.

John W. Lungstrum and Scott J. Bloch of Stevens, Brand, Lungstrum, Goden & Winter, Lawrence, Kan., John Campbell, Deputy Atty. Gen., Topeka, Kan., for defendants-appellees.

Before MOORE, BARRETT, Circuit Judges, and SPARR,* District Judge.

PER CURIAM.

Plaintiff appeals from an order of the district court granting defendants Henley and Hayden's motions for summary judgment. We affirm.[1]

In his complaint in district court, plaintiff alleged that he was terminated from his position as Director of the Transportation Division of the defendant, Kansas Corporation Commission, because of his political affiliation. Plaintiff was appointed director in 1980. He was terminated in 1987 when a new chairman of the Commission, defendant Henley, a Republican, was ap-

---

* Honorable Daniel B. Sparr, District Judge, United States District Court for the District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

pointed by the governor of Kansas, defendant Hayden.

The district court granted the State of Kansas and the Commission's motions to dismiss on the grounds of eleventh amendment immunity. Plaintiff did not appeal this order. In granting Henley and Hayden's motions for summary judgment, the court held that plaintiff had "met his burden of proving that his termination was the result of his association with the Democratic party." *Green v. Henley,* 727 F.Supp. 582, 584 (D.Kan.1989). However, the court, relying heavily on the position description of plaintiff's job and plaintiff's resume, *see infra,* held that party affiliation was an appropriate requirement for the effective performance of plaintiff's position. Therefore, no constitutional violation occurred as a result of plaintiff's termination. In addition, the court held defendants were entitled to qualified immunity from liability for damages.

On appeal, plaintiff argues that party affiliation was not an appropriate requirement for the effective performance of his position, defendants' infringement of his first amendment rights was not carefully tailored to achieve a legitimate state objective, defendants were not entitled to qualified immunity, and injunctive relief was warranted. Because of our resolution of the first two issues, we do not address plaintiff's remaining arguments.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). We first examine the record to determine if any genuine issue of material fact was disputed and, if not, we then determine if the district court correctly applied the substantive law. *Id.* We examine the factual record and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* Plaintiff may not rest on his pleadings but must set forth specific facts showing that there is a genuine issue of material fact as to the dispositive matters for which he will carry the burden of proof at trial. *Id.*

The Supreme Court has held that "the need for political loyalty of employees ... to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate," is a valid justification for political patronage dismissals of individuals in policymaking positions. *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976). "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). This question "can be answered best by analyzing the nature of the employee's duties and responsibilities." *Dickeson v. Quarberg,* 844 F.2d 1435, 1442 (10th Cir.1988).

■ Plaintiff argues that a factual dispute exists as to the extent he assisted in developing policies, the nature of his contact with the public, his testimony before the legislature, etc. These are not issues of *material* fact.

"*Elrod* and *Branti* require examination of the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office. Thus, if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance." *Tomczak v. City of Chicago,* 765 F.2d 633, 640–41 (7th Cir.) (citations omitted), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985); *see also Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981) ("The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementa-

tion."), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

The position description for director of the Transportation Division of the Commission states that the director assists the Commission in implementing provisions of the Kansas Motor Carrier Act and Railroad Act "by planning, implementing, directing, monitoring and evaluating policies established by the [Commission]." Doc. 80, Ex. B, Position Description at 1. The director participates in meetings involving the public, state, and federal government representatives, representatives of the railroad and motor carrier industry, and attorneys for those industries in which programs and policies affecting the various groups are discussed. The director also disseminates information to the general public and motor carrier applicants, testifies on legislative bills as a representative of the Commission, monitors the progress of legislative bills, researches letters of inquiry from legislators, and researches and analyzes transportation issues for the Commission. *Id.*

■ Not solely strict party affiliation, but also political loyalty, is a valid justification for political patronage dismissals. *See Williams v. City of River Rouge*, 909 F.2d 151, 153 n. 4 (6th Cir.1990) ("[P]olitical affiliation" refers to commonality of political purpose and support, not solely political party membership). Here, defendant Henley admitted that he was looking for "someone who can perform the job adequately and someone that is loyal ... to the Commission ... [r]egardless of their political affiliation." Doc. 80, Deposition of Keith R. Henley at 11.

The description of plaintiff's position clearly sets forth criteria for which termination is acceptable. The fact that the director met with the public and various representatives to discuss the Commission's policies and testified before the legislature as to those policies requires loyalty to the views of the Commission. We also note that in his resume, plaintiff clearly stated that he was in a policymaking position. He stated that he assisted in policy development by assisting the Commission

in "drafting position papers on issues effecting (sic) the division," doc. 80, plaintiff's resume at 2, and by the "researching and writing of a complex brief on the economic regulation of an industry which was used as the principle focus for the re-regulation of a state regulated industry," *id.* at 3.

Plaintiff argues that instead of termination, demotion would be a "less drastic" infringement on his first amendment rights. The Supreme Court has upheld political terminations, stating that a "government's interest in securing employees who will loyally implement its policies can be adequately served by choosing *or dismissing* certain high-level employees on the basis of their political views." *Rutan v. Republican Party of Ill.*, —— U.S. ——, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990) (emphasis added). The Court has set no requirement of demotion to a nonpolicymaking position as a preference to termination. Further, in his complaint, plaintiff asked only for "[r]einstatement to his former employment under the same terms and conditions as he would have had if he had not been discharged," doc. 3 at 5, not demotion.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.