**Sonia SOELTER, Plaintiff,**

v.

**KING COUNTY, a municipal corporation, et al., Defendants.**

**No. C94–1724Z.**

United States District Court, W.D. Washington, Northern Division.

July 10, 1996.

Jon Howard Rosen, Frank & Rosen, Seattle, WA, for Plaintiff.

Sandra K. Pailca, Therese Ann McGuire, King County Prosecuting Attorney's Office, Civil Division, Tort Section, Seattle, WA, for Defendants.

## ORDER

ZILLY, District Judge.

Plaintiff Sonia Soelter was the Acting Manager of Records and Elections for King County, Washington from May 14, 1993 to March 7, 1994, when she was dismissed by the newly elected King County Executive, Gary Locke. Ms. Soelter claims that Mr. Locke, a Democrat, dismissed her from her job because she is a Republican. She brings this action under 42 U.S.C. § 1983, alleging that her discharge for political reasons was in violation of the First and Fourteenth Amendments.[1] The defendants have moved for summary judgment, arguing that Ms. Soelter's position was one for which party affiliation and loyalty were appropriate requirements. The Court, having considered the parties' briefs and supporting evidence, and having heard oral argument on June 28, 1996, hereby GRANTS defendants' motion for summary judgment and DISMISSES plaintiff's claims with prejudice.

### Discussion

#### I. *The Elrod–Branti Exception*

In *Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court, in a plurality opinion, held that the practice of patronage dismissals clearly infringes First Amendment freedoms of belief and association. The Court determined that the conditioning of public employment on political affiliation could survive constitutional challenge only if it "further[ed] a vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained ... outweigh[ed] the loss of constitutionally protected rights." *Id.* at 363, 96 S.Ct. at 2684. The Court recognized that the government has a valid interest in insuring that "representative government not be un-

---

1. The Court previously granted summary judgment in favor of the defendants on plaintiff's § 1983 claim alleging retaliation for whistleblowing and her state law claim under RCW 49.60 for pregnancy discrimination. Plaintiff has voluntarily dismissed all claims against King County Executive Gary Locke and Pearl McElheran, the Deputy Executive for Administration for King County, in their individual capacities. Plaintiff has retained her claims against these individuals in their official capacities.

dercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Id.* at 367, 96 S.Ct. at 2687. However, the wholesale dismissal of public employees for partisan reasons, applied without regard to an employee's responsibilities, is not the least restrictive means of serving that interest. Rather, "[t]hat interest can be fully satisfied by limiting patronage dismissals to policymaking positions." *Id.* at 372, 96 S.Ct. at 2689.[2]

The *Elrod* Court provided little guidance to lower courts on how to determine whether a position is "policymaking;" however, the Court did state that the nature of the employee's responsibilities is "critical." *Id.* at 368, 96 S.Ct. at 2687. The Court suggested that employees who act as advisers or formulate plans for the implementation of broad goals, or whose responsibilities are not well defined or are of broad scope are more likely to function as policymakers. *Id.*

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court reaffirmed *Elrod's* holding that government termination of a public employee on account of his political affiliation implicates First Amendment concerns, but modified the standard for assessing when party affiliation, consistent with the First Amendment, may be an acceptable basis for terminating a public employee. The Court held that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate require-

ment for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1294. Although the government bears the burden of proving that political affiliation is an appropriate requirement for the position, "the inquiry is whether the affiliation requirement is a reasonable one." *O'Hare Truck Service, Inc. v. City of Northlake,* —— U.S. ——, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

In determining whether party affiliation is an appropriate requirement for the position, lower courts have focused on the functions of the public office in question and not the actual past duties of any particular occupant of that office. *See, e.g., Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 242 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *Ness v. Marshall,* 660 F.2d 517, 522 (3rd Cir.1981); *Meeks v. Grimes,* 779 F.2d 417, 419 (7th Cir.1985). "Thus, if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that make his political affiliation an appropriate requirement for effective performance." *Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985).

The parties disagree on whether the ultimate inquiry under *Branti* is a question of law or a question of fact. The Ninth Circuit has not spoken on the issue, and the circuits that have considered the question are split.[3]

---

**2.** Justice Stewart, in his concurring opinion, concluded that "confidential," as well as policymaking, employees may be discharged on the basis of political affiliation. *Elrod,* 427 U.S. at 375, 96 S.Ct. at 2690–91.

**3.** The First and Fourth Circuits have held that whether the *Elrod–Branti* justification applies is an issue of law for the court. *See McGurrin Ehrhard v. Connolly,* 867 F.2d 92, 93 (1st Cir. 1989) (whether the facts in the record demonstrate a job that falls within the *Elrod–Branti* "party affiliation" exception is a question of law); *Jones v. Dodson,* 727 F.2d 1329, 1336 (4th Cir. 1984) ("[w]hether this narrow justification is established presents an ultimate issue of law for the court"). The Third, Fifth and Seventh Cir-

cuits have held that the question of whether political affiliation is a proper job qualification is a question of fact for the jury. *See Ness v. Marshall,* 660 F.2d 517, 522 (3rd Cir.1981) (determination of status as a policymaker presents a "difficult factual question," but the issue may sometimes be resolved as a matter of law); *Stegmaier v. Trammell,* 597 F.2d 1027, 1034 n. 8 (5th Cir.1979) ("whether an employee is a policymaker or falls within the policymaker, confidential employee exception to *Elrod* is a question of fact"); *Soderbeck v. Burnett County,* 752 F.2d 285 (7th Cir.) ("the question was sufficiently uncertain to be one for the jury to decide"), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985); *Matlock v. Barnes,* 932 F.2d 658, 665 (7th Cir.) ("jury was in the best position to assess the credibility of the defendants' argu-

The Court need not resolve the issue, however, because on the record before the court there is insufficient evidence to raise a factual issue as to whether political affiliation is an appropriate requirement for the position of Manager of Records and Elections, and thus the issue may be resolved as a matter of law.[4]

## II. *Duties Performed by Manager of Records and Elections*

■ To determine whether the *Elrod–Branti* exception applies to the position of Elections Manager, the court must examine the powers and responsibilities inherent in that position. To ascertain the position's inherent powers, the court must look to the relevant state or local statutory law describing the position and its duties. *Waskovich v. Morgano,* 2 F.3d 1292, 1298 (3rd Cir.1993).

The executive branch of King County government consists of the county executive, the deputy county executive, and specific administrative and executive units. King County Code (KCC) 2.16.020. There are thirteen departments in the executive branch, each of which is headed by a Director. The departments are organized into divisions, each of which is "delegated the responsibility of efficiently and effectively carrying out assigned departmental or office functions." KCC 2.16.020(A)(5). The Department of Executive Administration manages and is fiscally responsible for four divisions, one of which is the Records and Elections Division. *Id.* The Records and Elections Division is headed by a Manager. Sonia Soelter was the Acting Manager for the Records and Elec-

tions Division at the time she was terminated.

The King County Code provides that the Records and Election Division shall have the following functions:

1. Conduct all special and general elections held in the county and register voters.

2. Manage the recording, processing, filing, storing, retrieval, and certification of copies as required, of all public documents filed within the division.

3. Process all real estate tax affidavits.

4. Act as the official custodian of all county records, per general law.

5. Manage the printing and distribution of the King County Code and supplements to the public.

KCC 2.16.090(B).

The duties of the Manager of Records and Elections (hereinafter, "Elections Manager") are further defined by state statute. Under state law, the Elections Manager for each county[5] has authority to, among other things, (1) call a special election upon the request of the appropriate governing body, if he or she determines an emergency exists, and combine, unite, or divide precincts for purposes of conducting the special election, RCW 29.13.020; (2) adjust temporarily precinct boundaries when a city annexes county territory to the city, RCW 29.04.040(5); (3) combine, unite, or divide precincts, or combine or unite election boards, for the purpose of holding any general or special election or any primary, RCW 29.04.055; (4) prescribe

---

ments about the need for secrecy in the Department, and its finding that [the] position was non-confidential as well as non-policymaking will not be overturned"), *cert. denied,* 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991); *Nekolny v. Painter,* 653 F.2d 1164, 1169–70 (7th Cir.1981) ("determination" of status as a policymaker "in many cases presents a difficult factual question;" "it was for the trier of fact to determine whether [the plaintiff] was a policymaker"), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

4. Plaintiff has attempted to raise an issue of fact by challenging the current Elections Manager's description of his duties and responsibilities. These allegations fail to raise a genuine issue of material fact, however, because it is the inherent

powers of the position, not the tasks that a particular officeholder performs, that are at issue in determining whether the *Elrod–Branti* exception applies. The duties and responsibilities of the Elections Manager position are prescribed by statute, and the plaintiff does not dispute which statutes apply. The parties disagree only as to how the various duties should be characterized. This does not create a genuine issue of material fact. *Green v. Henley,* 924 F.2d 185, 186 (10th Cir.1991).

5. The relevant statutes prescribe the duties of the "county auditor" for each county. In King County, the Elections Manager performs the functions of the county auditor, and thus is considered a "county auditor" within the meaning of Washington law. RCW 29.01.043.

reasonable rules and regulations for inspection of poll books or current lists of registered voters, RCW 29.04.100(2); (5) prescribe reasonable rules and regulations for furnishing reproductions of any form of data storage, RCW 29.04.110; (6) ensure that those persons charged with counting ballots are notified of all valid write-in candidates, RCW 29.04.190; (7) establish on a permanent basis at least one registration office in each legislative district by appointing persons as deputy registrars, who shall serve at the pleasure of the Elections Manager, RCW 29.07.100; (8) prepare, maintain, and operate voting systems, or employ and direct persons to perform some or all of these functions, RCW 29.33.130; (9) instruct all precinct election officers and political party observers in the proper conduct of their duties, or waive instructional requirements for personnel who have previously received training, RCW 29.33.340; (10) make final, binding decisions on requests by small districts to hold nonpartisan special elections by mail, RCW 29.36.120; (11) request that legislative authorities make their facilities available for use as polling places;[6] notify the legislative authority of the facility which, in the judgment of the Elections Manager, best meets state requirements for a polling place; and enter into contracts with the county, municipality, or district in which polling places sit, RCW 29.48.007; (12) adopt and publish, in consultation with the participating jurisdictions, administrative rules necessary to facilitate the provisions of any ordinance authorizing production of a local voter's pamphlet, including rules setting deadlines for inclusion in the pamphlet, limits on the length and deadlines for submission of arguments for and against each measure, the basis for rejection of any candidate's position or argument as libelous or inappropriate, and the procedures for an appeal process in the case of rejection, RCW 29.81A.030; (13) determine whether to mail the local voters' pamphlet to every resident or to registered voters only, depending on what, in his or her judgment, is the more economical and effective distribution of the pamphlet, RCW 29.81A.060; and (14) hold hearings and render administrative determinations on challenges to voter registrations, RCW 29.10.140.

■ The statutory duties of the Elections Manager make clear that political affiliation, or more specifically commonality of political purpose and support, is an appropriate requirement for the position. The Elections Manager possesses a substantial degree of responsibility and discretion in running the Division of Records and Elections. The officeholder makes significant decisions concerning how elections are conducted, where polling places are located, how and in what form information is disseminated to voters and the public at large, and in certain cases whether precincts are combined, united, or divided for purposes of a particular election. In addition, the Elections Manager communicates with and works with the governing bodies of cities, towns, and districts in establishing the manner in which county or local elections are conducted, and in formulating administrative rules governing dissemination of voter information. The Elections Manager also performs certain quasi-judicial functions, in that he or she conducts hearings and issues binding rulings on challenges to voter registration. Given the scope of the duties inherent in the position, it is clear that the Elections Manager has "meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

Plaintiff contends that while numerous statutes appear to vest the Elections Manager with significant discretion, the officeholder's actual authority is narrowly circumscribed because the position is highly regulated and certain actions are subject to approval of the Department of Executive Administration. An employee who has less than absolute discretion and authority may nevertheless create policy or influence the

---

**6.** The statute provides further that compliance with the Election Manager's request is mandatory; the legislative authority for the county, municipality, or district in question *must* make their facilities available for use as polling places when requested to do so by the Elections Manager. RCW 29.48.007.

way policy is implemented. "While input into a policy decision may be limited, in implementing [a] basis policy, [an employee] will make some decisions that will actually create policy." *Selch v. Letts,* 5 F.3d 1040, 1046 (7th Cir.1993) (internal quotations omitted), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

Here, while certain actions are subject to review and approval by the Department of Executive Administration, and other actions are triggered only upon the request of others, the Elections Manager still maintains substantial discretion in determining how elections are conducted; how, and to whom, voter information should be disseminated; and, in some cases, whether special elections will be conducted. The extent of the Manager's discretion was recently noted by the state court of appeals in *Brower v. Charles,* 82 Wash.App. 53, 914 P.2d 1202 (1996). In *Brower,* the Seattle City Council passed an ordinance to place Proposition 1 before the voters in a special election on May 21, 1996. Proposition 1, if approved, would have authorized the city to lift temporarily the limit on regular property tax levies in order to fund the South Lake Union Project. Opponents of Proposition 1 filed a petition for a writ of prohibition to, among other things, prohibit the Elections Manager from calling a special election. The court held that because there was no dispute that the city delivered its request to hold the special election at least 45 days prior to the proposed election date, as required by statute, the Elections Manager had full discretion to hold or not hold a special election:

> The language of the statute is very broad and grants the Manager complete discretion to determine whether a special election is warranted. ... Once [the request was delivered], the act of calling a special election was entirely within his discretion.

*Brower,* 914 P.2d at 1204–05.

The plaintiff's own description of her duties also demonstrates the breadth of her discretion in formulating and implementing policy. Ms. Soelter's resume describes her responsibilities as follows:

> Managed staff of 250 + employees and a 6.5 million dollar budget. Responsible for the preservation and maintenance of all orders and records pertaining to elections and for the administration of all elections in King County. Also responsible for the recording and preservation of deeds and related documents in compliance with legal mandates. *Established uniform policies related to the retention of King County records, and for monitoring departmental records retention practices. Wrote official legislation, lobbied county officials and state legislature as needed.*

Attachment A to Pailca Decl. (emphasis added). Plaintiff's admission that she wrote legislation and lobbied legislative officials as needed demonstrates that the Elections Manager is the County Executive's key representative on records and elections issues, and is in a position to advocate the enactment and implementation of policies that are either her own or those of the County Executive. Because the Elections Manager is a highly visible representative of the County Executive on these issues, and is responsible for advocating and implementing policy, the County Executive may reasonably · require that the officeholder share his political beliefs and goals.

In disputing the applicability of the *Elrod–Branti* exception to her position, the plaintiff has emphasized that the Elections Manager position is nonpartisan and that its duties must be carried out in a nonpartisan manner. Plaintiff argues that because partisanship would undermine the effective performance of the office, political affiliation is not a reasonable requirement for the position. There are no duties inherent in the position, she claims, that require the job to be performed by a Democrat.

■ As an initial matter, the Court rejects the plaintiff's narrow interpretation of "political affiliation." "Not solely strict party affiliation, but also political loyalty, is a valid justification for political patronage dismissals." *Green,* 924 F.2d at 187. "Political affiliation" refers to "commonality of political purpose and support, not solely political party membership." *Id.* (citing *Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir.1990)). *See also Waskovich,* 2 F.3d at 1301–02 (statement by defendants that politi-

cal affiliation was not a qualification for the job did not create factual dispute precluding summary judgment because defendants also testified that "sharing the same general philosophy" was important).

■ The Court also rejects the plaintiff's argument that the requirement of nonpartisanship is determinative of the *Elrod–Branti* question. Defendant Locke admits that the Elections Manager must perform his or her duties in a strictly nonpartisan manner. Contrary to plaintiff's view, however, this does not foreclose application of the *Elrod–Branti* exception. No doubt it would be inappropriate for an Elections Manager to use his or her position to skew elections or influence voters on political questions. But the issue here is not how much political change the officeholder may validly effectuate, but rather whether there is a need for the officeholder to be committed to the goals and objectives of the reigning faction. *Cf. Newman v. Voinovich,* 986 F.2d 159, 162–163 (6th Cir.) (fact that judges must be nonpartisan decisionmakers does not mean political affiliation cannot be considered in making judicial appointments), *cert. denied,* 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993); *Selch,* 5 F.3d at 1045–47 (while filling potholes was not a partisan political act, how and in what manner services were provided had a substantial effect on the public's perception of the Democratic administration, and thus political loyalty was a proper requirement for subdistrict superintendent position).

Defendants have identified several issues within the province of the Elections Manager where there is room for principled disagreement between the political parties, such as whether aggressive efforts should be made to increase voter registration, whether voter registration should be simplified, and whether voting, by mail or otherwise, should be made easier. There is also substantial room for disagreement on issues of budgeting and the setting of fiscal priorities for the division. Thus, while the Elections Manager must act in a nonpartisan manner, he or she nevertheless plays an important role in the implementation and effectuation of the County Executive's policies. Because the position of Elections Manager "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation," political affiliation may constitutionally serve as a requirement for the position. *Nekolny,* 653 F.2d at 1170.

Although not determinative of the *Elrod–Branti* question, the legislature's classification of the position as exempt from civil service or as "policymaking" is also relevant to the inquiry. *See, e.g., Jimenez Fuentes,* 807 F.2d at 246 (legislature's classification system was entitled to "some deference," but was not determinative of the *Elrod–Branti* question); *Zold v. Township of Mantua,* 935 F.2d 633, 640 (3rd Cir.1991) (legislature's determination to "depoliticize" position of deputy clerk was "significant"); *Lohorn v. Michal,* 913 F.2d 327, 334 (7th Cir.1990) (the legislature's considered description of the position as "policymaking" was "entitled to great weight," but the statutory label alone was an insufficient basis for concluding as a matter of law that *Elrod–Branti* applied). Here, the legislature has exempted from career service all department heads and division managers, and one administrative assistant and confidential secretary for each. Moore Decl. at ¶ 3; KCC 3.12.010(A)(7); KCC 7.16.100(13). As of December 1993, King County had approximately 7,500 employees, approximately 140 of whom held exempt positions. Moore Decl. at ¶ 4. The County's exemption of the position of Elections Manager from career service is further evidence that political loyalty and commonality of purpose are requirements for the position.

Finally, in the course of considering this motion, the Court has reviewed at least thirty-five cases where courts have considered the applicability of the Elrod–Branti exception, and in no case has a plaintiff with the level of discretion and authority approaching that of the Elections Manager been found to be outside the exception. In most cases where the exception has been found to apply, thereby relieving the defendant of liability, the plaintiff's position entailed far less discretion, authority, and responsibility than possessed by the Elections Manager. Defendant has submitted an index of cases in-

volving positions comparable to the plaintiff's in stature and responsibility level, and in each case the plaintiff's position has been found to be covered by the *Elrod–Branti* exception.[7]  Attachment B to Defendants' Supplemental Memorandum re: Political Discharge.  Plaintiff, on the other hand, has failed to point to a single case where a plaintiff held a position comparable to her own, either in terms of responsibility or discretion, which was determined to be outside the *Elrod–Branti* exception.  Viewing the cases as a whole, the Court concludes as a matter of law that plaintiff's position is within the parameters of *Elrod–Branti* coverage.

### Conclusion

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment on plaintiff's claim under 42 U.S.C. § 1983 that she was discharged in violation of her rights to association and political activity.

IT IS SO ORDERED.

The Clerk of the Court is directed to send uncertified copies of this order to all counsel of record.  The Clerk is directed to enter judgment dismissing this case with prejudice.

---

7.  There are no cases involving an Elections Manager.  The closest cases factually are *Waskovich,* 2 F.3d 1292 (involving the Director of Veterans' Administrative Services for the State of New Jersey); *Green,* 924 F.2d 185 (Director of Transportation Division, Kansas Corporation Commission); and *Selch,* 5 F.3d 1040 (Subdistrict Superintendent of Indiana Department of Highways).  In each case, the court concluded that political affiliation was a constitutionally permissible requirement for the position.