[No. A047126. First Dist., Div. Three. Aug. 14, 1990.]

COUNTY OF SONOMA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, JUDICIAL
COUNCIL OF CALIFORNIA et al., Respondents.

COUNSEL

Mullen & Filippi and James T. Ponzio for Petitioner.

Krimen, Hershenson, Da Silva & Daneri and Louis Harris for Respondents.

OPINION

STRANKMAN, J.—Petitioner County of Sonoma (County) seeks review of an order of the respondent Workers' Compensation Appeals Board (Board) denying reconsideration of the decision of the workers' compensation judge (WCJ) that respondent Raymond J. Byrne (applicant), a County municipal court judge, was an employee of the County and not of the State of California (State) or any agency thereof. Respondent Judicial Council of California (Judicial Council) has filed an answer. Neither the Board nor either of the other two respondents has filed answers. We issued a writ of review. After due consideration of the record herein, we have determined that the Board's order and the decision of the WCJ must be annulled.

*Factual and Procedural Background*

Applicant was a municipal court judge, elected to serve in the County in June 1980. His term of office began in January 1981 and ran for six years.

He lost his first bid for reelection on June 3, 1986. Beginning June 5, 1986, he was continuously absent from duty until January 5, 1987, the day his original term of office ended.

On January 8, 1987, applicant filed an application for adjudication of claim with the Board, case No. OAK 148411, in which he alleged cumulative injury to his nerves and psyche while employed as a municipal court judge. This application for adjudication of claim was made against both the State and the County, pending determination of the proper employer.

Several workers' compensation judges from the Santa Rosa office of the Board were disqualified or recused themselves from consideration of the matter. Thereafter, the matter was removed from the Santa Rosa office and referred to the Oakland office of the Board for reassignment and further proceedings. After hearings and submission of evidence, stipulated facts, and written arguments, the WCJ issued findings and an order on May 22, 1989, finding that the applicant was employed as a municipal court judge by the County rather than the State or any State agency.

The County filed a petition for reconsideration, contending that the WCJ had erred in determining that a municipal court judge is a County employee for workers' compensation purposes. On June 30, 1989, the WCJ issued his report and recommendation on reconsideration, again finding that at the time of the applicant's alleged injuries, he was an employee of the County. On August 10, 1989, the Board itself issued an order denying reconsideration and incorporating the report and recommendation of the WCJ.

The County sought a writ of review of the Board's decision in this court. After our initial denial of the petition, the Supreme Court granted review and ordered the matter returned to this court with directions to vacate our original order and issue a writ of review.

### Discussion

■■■ There is only one issue before us in this case. That question is whether, for purposes of workers' compensation benefits, a municipal court judge is an employee of the county wherein he or she sits, or of the State or any State agency. Surprisingly, this is a question which has apparently not been directly addressed by any reported decision in this State. We thus approach it as an issue of first impression.

Whether we approach the question from the standpoint of the constitutional and statutory position of municipal courts in the hierarchical system of State courts, or from the standpoint of logic and common sense, the idea

that municipal court judges could be classified as county employees immediately appears counterintuitive. The system of courts in California is a statewide system, established by the State Constitution and the statutes enacted by the Legislature pursuant thereto. The workings, procedures, establishment, powers, makeup, and general constitution of municipal courts are State rather than municipal or local affairs. It is undisputed that the State Constitution and statutes give the State, not the counties, direction and control over municipal court judges.

■ The essential characteristic of the employment relationship is the right to control and direct the activities of the person rendering service or the manner and method in which the work is performed. *(Industrial Ind. Exch.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 130, 134-135 [156 P.2d 926]; *National Auto. Ins. Co.* v. *Ind. Acc. Com.* (1943) 23 Cal.2d 215, 219 [143 P.2d 481]; *Edwards* v. *City of Chico* (1972) 28 Cal.App.3d 148, 153 [104 Cal.Rptr. 481]; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 150, p. 719.) Direction and control are thus the key elements identifying an employer for workers' compensation purposes, where the identity of the employer is unclear. ■ Under the Constitution and statutes of the State, the State itself retains the authority to administer, control, direct, censure, discipline, remove, retire, and admonish judges of the municipal courts. There are no provisions delegating any authority for these functions to the various counties in which municipal court judges sit. In consequence, the counties have absolutely no influence or control over the manner in which a municipal court judge performs his or her duties.[1]

---

[1] The areas of State control over the municipal courts and municipal court judges, and the specific ways in which this control is exercised, are comprehensive. Thus, the municipal courts are established and defined by the State Constitution, which states that "[t]he Legislature shall provide for the organization and prescribe the jurisdiction" of the municipal courts, and "shall prescribe for each municipal court . . . the number, qualifications, and compensation of judges, officers, and employees." (Cal. Const., art. VI, § 5, 3d par. of subd. (a).) The California Supreme Court, acting on the recommendation of the Commission on Judicial Performance, is empowered to suspend, censure, remove, or retire municipal court judges. (Cal. Const., art. VI, § 18.) Rules as to practice, procedure, and administration are promulgated by the Judicial Council. (Cal. Const., art. VI, § 6; Cal. Rules of Court, rule 982 et seq.) Municipal court judges are required to report to the Judicial Council concerning the condition of judicial business in their courts, as directed by the Chief Justice of the State. (Cal. Const., art. VI, § 6, 6th par.) Municipal court judges may be assigned to court anywhere in the State. (Cal. Const., art. VI, § 6, 5th par.) Vacancies in particular municipal court judgeships are filled by appointment of the Governor of the State. (Gov. Code, § 71180.) Judges for the municipal court are elected at the "[g]eneral" *statewide* elections next preceding the expiration of their terms, as opposed to "[l]ocal" county or municipal elections. (Gov. Code, § 71141; Elec. Code, §§ 20, 25.) Under the State Constitution, the Legislature prescribes the compensation for municipal court judges, and "provide[s] for retirement, with reasonable allowance, of [municipal court judges] for age or disability." (Cal. Const., art. VI, §§ 19, 20; Gov. Code, § 68202, subd. (b).) Municipal court judges are subject to impeachment by the State Assembly and trial by the State Senate. (Cal. Const., art. IV,

In this case, the WCJ's report and recommendation, which was adopted and incorporated by the Board in its decision, conceded as a matter both of fact and of law that the County board of supervisors lacked "the power to directly control the manner in which a municipal court judge performs his [or her] duties." As the WCJ stated: "A county now appears to have only the most indirect and remote influence over a municipal court. See, for example, the limited power of a board of supervisors to determine the division of the county into judicial districts under Government Code Section 71040 and following. [Citation.] As far as state statutes and constitutional provisions go, Sonoma County appears to be correct that almost all power over municipal courts has been vested in state-level agencies, primarily the Legislature, Judicial Council, Commission on Judicial Performance, and Supreme Court."

Nevertheless, the WCJ relied on the Supreme Court decision in *Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718 [235 P.2d 16] (hereinafter *Villanazul*) to decide that municipal court judges are in fact county employees rather than State employees. In *Villanazul*, the Supreme Court found that although the municipal court system is part of the overall judicial system of the State, and was created by the State Legislature in accordance with the State Constitution, this alone did not make a municipal court an agency of State government for purposes of determining whether a deputy marshal of the municipal court was an employee of the State or of the county. Finding that "[t]he constitutional and statutory provisions authorizing and governing municipal courts, considered in connection with the purpose and effect of the establishment of such courts, lead to the conclusion that they have been impressed with a local character . . ." (*id.*, at p. 723), the court concluded that "[t]he fundamental basis of the [municipal] court, as fixed by the Constitution and statutes, indicates that essentially it is a creature of the county." (*Id.*, at pp. 724-725.)

The issue in *Villanazul* arose in the context of an appeal from judgments entered upon the sustaining of separate demurrers by the city and the county in which the municipal court was located, as well as by the State. The underlying action was brought to recover damages assertedly caused by the negligence of the deputy marshal while acting within the course and scope of his employment by the municipal court. The Supreme Court concluded that the deputy marshal was an employee of the municipal court itself, not of any of the three governmental entities which had been sued (city, county, and State). It then went on to consider whether the municipal court itself was a city, county, or State agency, and determined that for

§ 18.) Municipal court judges are not included among the "[c]ounty officers" enumerated by statute. (Gov. Code, §§ 24000, 24009; Elec. Code, § 33.)

purposes of determining the employment status of a deputy marshal, the court was "local" in character, and more closely connected with the county than with the city.[2] The specific holding was to affirm the judgments as to the demurrers of the city and the State, and to reverse the judgment entered in favor of the county on its demurrer. (*Villanazul, supra*, 37 Cal.2d at pp. 722-726.)

In concluding that the deputy marshal was employed by the municipal court and not by the city, the county, or the State, the Supreme Court applied the well-established control test. As the court stated: "The essential characteristic of employment relationship is the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed. [Citation.] Existence of the right is often tested by determining whether, if instructions were given, they would have to be obeyed. [Citation.] The right to terminate the service at any time is a

---

[2] As the Supreme Court stated: "It must be conceded at the outset that a municipal court is a part of the judicial system of the state, and the constitution or control of such courts, except only the question as to whether one shall be established in a given locality, is a state rather than a municipal affair. [Citation.] It does not follow, however, that a municipal court is an agency of state government, as distinguished from county or city government, in the sense that a deputy marshal is a state employee. Justices' courts and police or city courts are part of the judicial system of the state [citations], yet their local character is recognized and their attachés are either county or city officers and employees. [Citations.] As stated in [*People* v. *Cobb* (1901) 133 Cal. 74, 77 (65 P. 325)], 'It does not follow . . . , from the peculiar nature of their offices, that justices of the peace or other judicial officers do not constitute a part of county or city government.' [Citation.]

"The fact that the Legislature created the office of deputy marshal and prescribed the duties and salary of the position does not fix the status of such a person as a state, rather than a county or city employee. The Legislature creates many and varied offices or positions of local government, with specified duties and salaries. [Citation.] . . .

"The constitutional and statutory provisions authorizing and governing municipal courts, considered in connection with the purpose and effect of the establishment of such courts, lead to the conclusion that they have been impressed with a local character. . . .

"Generally speaking, the municipal court's jurisdiction extends throughout the county [citations], and in a certain class of cases that jurisdiction is exclusive. [Citations.] The primary purpose in creating municipal courts was to relieve the congestion in the superior court. [Citations.] They are courts of record [citation], and their process . . . extends throughout the state. [Citations.]

"The county in which a municipal court is established is charged with the cost of maintenance. It is required to pay the salaries of the judges, officers and attachés, . . . and must provide quarters, supplies and equipment for the court. [Citation.] Fines and forfeitures collected by a municipal court are deposited with the county treasurer and thereafter divided between the county and city. [Citations.] Fees received are paid into the county treasury in the same manner as those collected by salaried county and township officers. [Citation.]

"In various other respects, the law places municipal court officers and attachés . . . in the same category as recognized county officers and employees . . . . The municipal court or judge is represented by the district attorney if the court or judge is a party defendant in an action. [Citation.] . . .

" . . . The fundamental basis of the [municipal] court, as fixed by the Constitution and statutes, indicates that essentially it is a creature of the county." (*Villanazul, supra*, 37 Cal.2d at pp. 722-725.)

strong circumstance tending to show the right to control. [Citation.]" (*Villanazul, supra*, 37 Cal.2d at p. 721.) Because "neither one of the three governmental or political entities, as such, directly or immediately had the right to supervise the conduct of [the deputy marshal] or control and direct the manner in which his duties were to be performed . . . ," the court concluded that "[t]hat power was vested in the municipal court . . ." alone. (*Id.*, at p. 722.)

Although *Villanazul* happens to be the most closely analogous case to that before us, we are of the opinion that it is distinguishable from the present case both on the facts and on the law, and that it does not support a conclusion that municipal court judges are employees of the counties in which they sit, rather than of the State.[3]

The most obvious distinction between *Villanazul* and the instant case rests in the distinction between a deputy marshal and a municipal court judge. In *Villanazul*, the Supreme Court concluded that the entity vested with the power to control and direct a deputy marshal was the municipal court itself. Indisputably, it is the municipal court that has the direct and immediate right and power to supervise, direct, and control the manner in which a deputy marshal performs his or her duties. (*Villanazul, supra*, 37 Cal.2d at p. 722.) It is the municipal court that hires and fires the deputy marshal, and to which the deputy marshal reports and is responsible. A deputy marshal is a civil service position, filled competitively from among civil service candidates.

A municipal court judge, on the other hand, is appointed by the Governor of the State or elected by the people. Unlike the other persons who work

---

[3] In his report and recommendation, the WCJ himself expressly agreed with the County that *Villanazul* "could be distinguished from the present case both factually and legally." As the WCJ stated: "That case [*Villanazul*] involved a deputy marshall of the municipal court, rather that [*sic*] a judge. More persuasive arguments may be made that judges should be treated as state employees for workers' compensation purposes than can be offered for deputy marshalls. Some changes in the law have occurred since the decision in [*Villanazul*], including a 1966 constitutional amendment concerning, among other things, organization of the courts of record and the system of disciplining the judges who sit in them, as well as legislative amendments which arguably strengthen the role of the state as opposed to the counties in operation of the courts of record.

"Another obvious distinction is that this case involves a workers' compensation claim, while *Villanazul* involved derivative liability of the three alleged employers, the city, the county, and the state, for allegedly negligent driving of an automobile by the deputy marshall within the course and scope of his employment. A final distinction, though not perhaps the last remaining significant one, is that that case arose on appeal from judgments entered after general demurrers were granted, while this case arises out of [Judge Byrne's] allegations in his application [for workers' compensation benefits] of employment by the state and the county. *Villanazul* was therefore decided solely on the law and not the facts, while the present case raises both legal and factual issues."

at a municipal court, the municipal court judge is not subject to removal from office by any official in the municipal court itself. He or she is not hired, fired, controlled, and directed by the county or by the municipal court in any way. To the contrary, the right and power to control and direct the municipal court judge rests with the State alone.

Equally important is the fact that the constitutional and statutory context in which *Villanazul* was decided has changed a great deal since 1951, the year of the Supreme Court's opinion in that case. Even at that time, the Supreme Court noted that its decision was based upon the constitutional and statutory provisions governing municipal courts prior to amendments to article VI of the State Constitution enacted by the voters in 1950. (*Villanazul, supra*, 37 Cal.2d at p. 726.) Subsequently, in 1966, the State Constitution was amended substantially, to provide, among other things, that "[t]he Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts. It shall prescribe for each municipal court and provide for each justice court the number, qualifications, and compensation of judges, officers, and employees." (Cal. Const., art. VI, § 5, 3d par. of subd. (a).) ▮ Under this provision, the Legislature made it clear that "although the county board of supervisors has authority to legislate with respect to local matters, the functioning of the courts is a statewide and not a local matter and this power is specifically granted to the Legislature. [Citations.] ▮▮▮▮ Indeed, it appears that in formulating the wording of article VI, section 5 (formerly art. VI, § 11), the Legislature was careful to reword that section so as to 'clarify its authority over individual municipal and justice courts.' [Citations.]" (*County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 669 [114 Cal.Rptr. 283].)[4]

▮ Numerous other changes in the State Constitution since 1951 have strengthened the State's authority over the municipal courts in general and municipal court judges in particular. Thus, California Constitution article VI, section 18, provides for the suspension, removal, retirement, and censure of municipal court judges by the Supreme Court, upon the recommendation of the Commission on Judicial Performance and pursuant to rules promulgated by the Judicial Council. The courts of the State, including the

---

[4]The wording of California Constitution, article VI, section 5, is very significant, not least in the choice of the words "prescribe" and "provide" with reference to municipal and justice courts, respectively. The use of the word "provide" indicates an intention to permit the Legislature to delegate its duties with regard to the justice courts to the counties. The word "prescribe," on the other hand, which is used in connection with the Legislature's duties regarding municipal courts, manifests an intention that the Legislature *must* itself exercise the functions described. In short, the word "prescribe" indicates the imposition of a nondelegable duty, whereas the more general term "provide" permits the delegation of the described duty to others. (*County of Madera* v. *Superior Court, supra*, 39 Cal.App.3d at p. 670, fn. 3.)

municipal courts, are administered, monitored, and governed by the Judicial Council and the Commission on Judicial Performance. (Cal. Const., art. VI, §§ 6, 8; Cal. Rules of Court, rule 982 et seq.) In sum, provisions of the State Constitution enacted since *Villanazul* establish that it is the State itself, and not the counties, which controls and directs the municipal courts, and which hires, disciplines, and fires all judges in the State, *including* municipal court judges.

The instant case is procedurally distinguishable from *Villanazul*. A workers' compensation claim such as that before us clearly raises different questions and concerns than a personal injury claim arising out of an automobile accident, in which damages are sought on the basis of respondeat superior. In a personal injury case in which the question of vicarious liability is raised, the issue is an employer's liability for injuries caused *by* its employee; whereas in a workers' compensation case, the basic inquiry involves identifying which injuries *to* the employee would be insured against by the employer. The public policy considerations involved in the workers' compensation context require an entirely different approach than that which might be appropriate in a simple tort case.

In finding that municipal court judges are county employees rather than employees of the State, the WCJ placed great reliance on the fact that the bulk of the money paid to municipal court judges as salaries is provided by the counties themselves, with only a small fraction provided by the State. However, it is the Legislature which prescribes the compensation for municipal court judges, and "provide[s] for retirement, with reasonable allowance, of [municipal court judges] for age or disability." (Cal. Const., art. VI, §§ 19, 20; Gov. Code, § 68202, subd. (b).) The facts in the record show that not only is the actual amount of compensation paid to municipal court judges set by the State, but the annual adjustments to the compensation of municipal court judges are based upon increases received by State employees, rather than on salary increases received by county employees. It is the State and not the counties which contributes to and provides for the municipal court judges' retirement plans. In our opinion, the mere fact that the money paid to a municipal court judge as salary comes from county-based funds and sources does not make the judge a county employee, where it is the State which actually sets the terms and amount of salary, provides the source of funding from which the county derives the money to pay the salary, and merely requires the county to make the payments.[5] Significantly,

---

[5] The system of funding the trial courts was radically altered by the passage in 1988 of legislation known as the Brown-Presley Trial Court Funding Act, which established a system of direct "net block grant" state funding for both municipal and superior trial courts, without requiring the counties to transmit to the state any of the fees, fines, and forfeitures paid into the courts. (Stats. 1988, ch. 945, § 1 et seq. & Legis. Counsel's Dig. of Sen. Bill No. 612

municipal court judges are not included among the "[c]ounty officers" enumerated by statute. (Gov. Code, §§ 24000, 24009; Elec. Code, § 33.)[6]

It bears emphasis that, contrary to the implication in the decisions of the WCJ and the Board, *Villanazul* does not hold that municipal court judges are county employees. The Supreme Court's holding, limited as it is by the facts before it and the procedural posture in which the case arose, is that counties may have to respond to tort suits filed against deputy marshals employed by municipal courts, arising out of their alleged negligence while in the course and scope of their employment. The fact that the Supreme Court stated that municipal courts are "impressed with a local character" cannot, we believe, justify the conclusion that municipal court *judges* are employees of the counties in which they sit. (*Villanazul, supra*, 37 Cal.2d at p. 723.) The *Villanazul* court was not presented with the case before us. To simply apply its particular holding to the instant factual situation would require a leap of logic which we are unprepared to take.

■  The Judicial Council filed an answer to the petition for review arguing that the provisions of Government Code sections 53200 et seq., dealing with insurance, health, and welfare benefits for county officers and employees, establish that municipal court judges are county employees. These provisions of the Government Code define " '[h]ealth and welfare benefit' " to include hospital, medical, surgical, disability, legal, income protection insurance, life insurance, "or related benefits . . . ." (Gov. Code, § 53200, subd. (d).) Government Code section 53200.3 specifically states that superior and municipal court judges, together with all officers and attachés of

(1987-1988 Reg. Sess.) No. 4 Deering's Adv. Legis. Service pp. 3378-3400, No. 10 West's Cal. Legis. Service, pp. 2171-2192.) The legislation provides that a county may opt into the state funding system only with the concurrence of a majority of the board of supervisors, the judges of the superior court, and the judges of the municipal and justice courts. (Gov. Code, § 77301.)

Under this new system, which highlights the independence of both municipal and superior court judges from county governments, any employment connection between municipal court judges and county governments has become even more attenuated, and the role of the state far greater. It is evident to us that this current system of state block grant funding for the courts does away with the very bases for the WCJ's decision in this case, which relies on the premise that the counties and not the state pay the judges' salaries.

[6]The circumstances of the instant case well illustrate the danger of basing a decision regarding the identity of a municipal court judge's employer on which entity pays the judges' salaries. Here, the County had to continue paying Judge Byrne's salary for a period of seven full months during which he failed to report to his duties and repeatedly ignored requests for medical verification of his lengthy absence. Thus, despite Judge Byrne's unexplained and unexcused absence from work, the County could do nothing but continue his State-mandated salary payments. The County could not order him back to work, discipline him, terminate his employment, or withhold his pay. All of these powers rest with the State alone. On these facts, it makes a mockery of common sense to conclude that the County was the judge's employer simply because it paid his salary.

those courts "whose salaries are paid either in whole or in part from the salary fund of the county are county employees and shall be subject to the same or similar obligations and be granted the same or similar employee benefits as are now required or granted to employees of the county in which the court of said judge, officer, or attaché is located."

The Judicial Council argues that, in these provisions, the Legislature has specifically stated that municipal court judges are county employees for purposes of health and welfare benefits. Although the statutes do not expressly enumerate benefits under the workers' compensation system within the broad definition of " '[h]ealth and welfare benefit[s],' " the Judicial Council urges that a reading of the entire statutory structure as well as the decisional law of this court support the conclusion that workers' compensation benefits are included. (See *Mihesuah* v. *Workmen's Comp. Appeals Bd.* (1972) 29 Cal.App.3d 337, 339-341 [105 Cal.Rptr. 561] [medical treatment rendered under employer's group insurance policy for industrial injury equated with medical treatment rendered under workers' compensation].) Under this interpretation, the County, as the provider of group insurance benefits to municipal court judges, would also be deemed the employer for purposes of workers' compensation benefits.

We disagree with the position taken by the Judicial Council. Although the question is not before us, we note that the Government Code provision in question may well be unconstitutional.

In 1956, the Attorney General issued an opinion concluding that superior and municipal court judges and certain personnel of the superior courts were not county employees and were thus ineligible for county-sponsored health insurance. (27 Ops.Cal.Atty.Gen. 338 (1956).) In 1976, the Attorney General issued another opinion, specifically stating that the version of Government Code section 53200.3 then in effect was unconstitutional, insofar as it ran afoul of the provision in California Constitution, article VI, section 19, which states that "[t]he Legislature shall prescribe compensation for judges of courts of record. . . ." Citing the 1967 Judicial Council Report to the Governor and the Legislature on this provision and the opinion in *County of Madera* v. *Superior Court, supra,* 39 Cal.App.3d at page 670, the Attorney General stated: "Because of the use of 'prescribe' the Legislature cannot delegate the authority granted to it by Article VI, section 19 of the Constitution. Any attempt to make such a delegation would be constitutionally invalid." (59 Ops.Cal.Atty.Gen. 496, 497 (1976).) The opinion concluded that "that section [Gov. Code, § 53200.3] is an unconstitutional attempt on the part of the Legislature to delegate a nondelegable duty." (*Id.,* at p. 501.)

Subsequently, the statute was amended by the Legislature to its present form, in an attempt to meet the concerns of the Attorney General. (Stats. 1977, ch. 106, § 1, pp. 537-538.) In 1978, the Attorney General issued another opinion on the statute, stating that the Legislature had failed to remove those deficiencies in the original section that had rendered it unconstitutional. (61 Ops.Cal.Atty.Gen. 388, 390 (1978).)

In conclusion, we hold that for purposes of workers' compensation benefits, municipal court judges must be considered to be employees solely of the State, and not of the counties in which they sit. Consequently, the WCJ and the Board erred in concluding that the applicant was employed by the County rather than by the State, and that the County was liable for workers' compensation benefits in this case.

Accordingly, the decision of the Board is annulled, and the Board is instructed to enter an order finding that, in his capacity as a judge of the municipal court of the County of Sonoma, the applicant was an employee of the State of California.

White, P. J., and Merrill, J., concurred.