Donald L. MEEK, Plaintiff,

v.

COUNTY OF RIVERSIDE; Albert J. Wojcik; and Rodney Walker, Defendants.

No. CV 97–1179RAP(AJWX).

United States District Court, C.D. California.

Sept. 2, 1997.

George W. Shaeffer, Jr., Irvine, CA, for Plaintiffs.

Timothy T. Coates, Marc J. Poster, Greines Martin Stein & Richland, Beverly Hills, CA, for Defendants.

## ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTION TO DISMISS

PAEZ, District Judge.

### I.

### *Introduction*

Plaintiff Donald L. Meek brings this action against the County of Riverside and Munici-

pal Court Judges Albert J. Wojcik and Rodney Walker alleging that defendants constructively terminated him from his position as a Commissioner of the Riverside Consolidated Superior and Municipal Courts. Plaintiff alleges that he was forced to retire in retaliation for seeking election to the same Municipal Court position as then-Commissioner Wojcik in the April, 1996, judicial elections. Plaintiff seeks relief under 42 U.S.C. § 1983 for the alleged infringement of his First Amendment right to campaign for public office.

Pending before the Court is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The County of Riverside contends that it is not responsible for the conduct of municipal court judges because they are state officials, and the defendant judges assert that they are entitled to both judicial and political immunity. Upon consideration of the parties' moving, opposition and reply papers, and the oral arguments of counsel, the motion to dismiss the action against the County of Riverside is properly granted. The individual defendants, however, are not entitled to judicial immunity for the acts alleged in the complaint, and whether the individual defendants are entitled to political immunity cannot be resolved on the record before the Court. Accordingly, defendants' motion to dismiss is granted in part and denied in part.

## II.

### *Factual Background*

Plaintiff alleges that he served as a Commissioner of the Riverside Consolidated Superior and Municipal Courts from May, 1989, until defendants allegedly forced him to retire in April, 1996. Plaintiff alleges that he was primarily assigned to the Mt. San Jacinto Judicial District, one of several municipal judicial districts in Riverside County. According to plaintiff, in September, 1995, he learned that Judges Peterson and McCarthy intended to retire in March and April of 1996, respectively, creating two vacancies, including one on the Mt. San Jacinto Municipal Court. Plaintiff alleges that he approached then-commissioner Wojcik about an arrangement whereby plaintiff would support Wojcik in the April, 1996, non-partisan, election to replace Judge Peterson, and Wojcik would

support plaintiff in his effort to obtain an appointment by Governor Wilson to replace Judge McCarthy.

According to plaintiff, it soon became apparent to him that Wojcik would not support him in his effort to obtain a gubernatorial appointment to replace Judge McCarthy. Furthermore, plaintiff allegedly learned that Judge Curtis R. Hinman had written a letter to Governor Wilson supporting Sherrill Nielsen, Judge Walker's friend and associate, to replace Judge McCarthy. Recognizing that he was unlikely to obtain an appointment to replace Judge McCarthy, plaintiff sought election to the judicial position created by Judge Peterson's retirement and, consequently, campaigned against then-Commissioner Wojcik. During the campaign, Judge Walker allegedly stated that plaintiff was his political enemy and that if plaintiff lost the election, Judge Walker would terminate plaintiff from his position as Commissioner.

On April 3, 1996, defendant Wojcik was elected judge of the Mt. San Jacinto Municipal Court. On April 4, 1996, then-commissioner Wojcik, Judge Walker, and Judge Hinman met regarding plaintiff's termination. At that meeting, Wojcik and Judge Walker voted to terminate plaintiff as Commissioner; Judge Hinman abstained. At the time of the vote, defendant Wojcik had not yet taken his oath of office as a municipal court judge.

On April 8, 1996, Judge Hinman allegedly informed plaintiff that he should resign or be fired. Judge Hinman told plaintiff that he could have a hearing before Judge Wojcik and Judge Walker, but that "it would do no good, because the outcome would be the same." Complaint, ¶ 18. According to plaintiff, he elected to retire effective April 8, 1996. Plaintiff alleges that defendants forced him to retire, thereby constructively terminating his employment.

## III.

### *Discussion*

#### A. Standard

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. According-

ly, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). The court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988). "[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994).

Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). The court is not required, however, to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg*, 18 F.3d at 754–55.

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan*, 108 F.3d at 248 (citations omitted). Consequently, a court may not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by the inclusion of additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995).

**B. Application**

**1. The County of Riverside Is Not Responsible for the Conduct of Municipal Court Judges**

■ The County of Riverside correctly argues that Judge Walker and then-Commissioner Wojcik were "state officials" at the time of the acts alleged, and that the county cannot be held responsible for their conduct. A municipality may only be held liable under § 1983 for acts "for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). In addition, only municipal officials with "final policymaking authority" may subject the municipality to § 1983 liability. *Id.* Whether a particular official has such authority is a question of state law. *Id.* Finally, a municipality will only be subject to liability where the alleged violation occurred pursuant to a policy adopted by the officials responsible for making policy in that area. *Id.; see also McMillian v. Monroe County, Alabama,* —— U.S. ——, ——, 117 S.Ct. 1734, 1736–37, 138 L.Ed.2d 1 (1997) (applying test from *Praprotnik*). In the context of determining whether a municipality was liable for certain acts of a city judicial officer, the Ninth Circuit recently explained that "[t]he crucial factor is whether under state law the acts in question were performed under the municipality's or the state's authority." *Eggar v. City of Livingston*, 40 F.3d 312, 314 (9th Cir.1994).

Here, the analysis is necessarily somewhat perfunctory because the Ninth Circuit has explicitly held that the California municipal courts are an arm of the state. *See Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). "It is undisputed that the State Con-

stitution and statutes give the State, not the counties, direction and control over municipal court judges." *Id.* (quoting *County of Sonoma v. Workers' Compensation Appeals Board,* 222 Cal.App.3d 1133, 272 Cal.Rptr. 297 (1990)). Most significantly, it is the state that grants municipal court judges discretion to hire and fire court commissioners. Cal. Gov't.Code §§ 72190, 74135.6.

■ In sum, "counties have absolutely no influence or control over the manner in which a municipal court judge [or commissioner] performs his or her duties." *County of Sonoma,* 222 Cal.App.3d at 1137, 272 Cal. Rptr. 297. Consequently, defendants' alleged acts could only have been authorized by the State of California, and the County of Riverside cannot be held liable for those acts under § 1983.[1] The motion to dismiss plaintiff's claims against the County of Riverside is, therefore, **GRANTED.**

## 2. Judges Walker and Wojcik Are Not Entitled to Judicial Immunity

■ Judges are absolutely immune from suit under § 1983 with only two exceptions. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 287–88, 116 L.Ed.2d 9 (1991). "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. [ ] Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12, 112 S.Ct. at 288 (citations omitted) Here, defendants are not entitled to immunity both because their alleged actions were not taken in their judicial capacities, and because, even if defendants' actions were judicial in nature, they were taken in the complete absence of all jurisdiction.

### a. The Acts of Judge Walker and then-Commissioner Wojcik Were Administrative Rather than Judicial in Nature

■ In evaluating whether a judge's actions are judicial in nature, one must look at "the nature of the function performed— adjudication—rather than the identity of the actor who performed it—a judge." *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Administrative decisions terminating subordinate employees, although "important in providing the necessary conditions of a sound adjudicative system ... [are] not themselves judicial or adjudicative." *Id.* at 229, 108 S.Ct. at 545. In *Forrester,* a state court judge had hired the plaintiff as a probation officer to prepare presentence reports for adult offender cases and make recommendations for the disposition and placement of juvenile defendants. *Id.* The plaintiff was promoted to a supervisory position but demoted a year later and soon afterwards discharged. *Id.* The plaintiff filed suit alleging sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.*

In considering whether the state court judge could assert judicial immunity as a complete defense, the Supreme Court stated that "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not ... been regarded as judicial acts." *Id.* at 228, 108 S.Ct. at 544. Judges' hiring decisions are executive decisions, indistinguishable from "a district attorney hiring or firing assistant district attorneys, or ... other executive branch official[s] responsible for making such employment decisions.... [N]o one suggests that they give rise to absolute immunity from liability in damages under § 1983." *Id.* at 229, 108 S.Ct. at 545.

---

**1.** Although municipal court judges and commissioners must be treated as state officials, the Eleventh Amendment precludes plaintiff from seeking damages against California or against Judges Walker and Wojcik in their official capacities. "The United States Supreme Court has dictated that, unlike counties and municipalities, state governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Con-

stitution." *Mumford v. Basinski,* 105 F.3d 264 (6th Cir.1996) (citing *Mt. Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977), *superseded by statute on other grounds as stated in Rivera v. U.S.,* 924 F.2d 948 (9th Cir.1991)); *see also Franceschi,* 57 F.3d at 831. (9th Cir.1995) ("Given the extensive control exercised by the state over the municipal courts .... the municipal court is protected by the Eleventh Amendment")

 Federal court decisions subsequent to *Forrester* confirm the general rule that a judge's act in terminating an employee is administrative, rather than judicial, entitling the judge to qualified immunity at best. *See Mireles,* 502 U.S. at 15, 112 S.Ct. at 289–90 (judge immune from suit for ordering police officers to bring public defender before the judge); *Franceschi v. Schwartz,* 57 F.3d 828 (9th Cir.1994) (judge entitled to judicial immunity because issuance of bench warrants and orders to take violators into custody are judicial acts); *Rosenthal v. Justices of the Supreme Court of California,* 910 F.2d 561 (9th Cir.1990) (judges have absolute immunity in deciding the qualifications of attorneys who will practice in their courts); *McMillan v. Svetanoff,* 793 F.2d 149 (7th Cir.1986) (judge not entitled to judicial immunity for firing court reporter because act did not constitute judicial decision-making); *Cameron v. Seitz,* 38 F.3d 264 (6th Cir.1994) (firing a secretary is an administrative act, while transferring responsibilities from one case worker to another is a judicial act); *Clark v. Campbell,* 514 F.Supp. 1300 (W.D.Ark.1981) (when a judge hires or fires county employees, the judge is not exercising a judicial function). The established rule, therefore, indicates that defendants are not entitled to judicial immunity for their respective roles in plaintiff's allegedly forced retirement.

Nonetheless, defendants offer several arguments in support of their position that they are entitled to judicial immunity. First, defendants rely on the Sixth Circuit's decision in *Seitz,* arguing that they are entitled to judicial immunity because judges perform an inherently judicial function when they exercise control over subordinate judicial officers who participate in the decision-making process. Defendants are correct that a court commissioner can take evidence and make proposed findings on any matter requested by a judge of the municipal court, approve bonds, administer oaths, and take affidavits and depositions. *See* Cal. Civ. Proc. Code § 259; Cal. Gov't Code § 72190. These duties are judicial in nature and judges properly exercise their judicial authority when assigning these judicial tasks to subordinate judicial officers. *Seitz,* 38 F.3d at 271.

*Seitz,* however, presented a somewhat different set of facts than those alleged by plaintiff. In *Seitz,* the judge reassigned the plaintiff's cases to another case worker, making a decision about case management rather than deciding whether the case worker should be fired. As the Sixth Circuit explained, "when Seitz transferred [plaintiff's] cases to another case worker, [Seitz] was controlling the proceedings in his courtroom and was therefore entitled to immunity." *Id.* at 272. By contrast, Judge Walker and then-commissioner Wojcik were not involved in any judicial proceedings when they allegedly forced plaintiff to retire. The decision to terminate plaintiff was an administrative decision involving a subordinate employee, not a judicial decision involving resolution or disposition of cases or other legal matters within the jurisdiction of the municipal court.

 Second, defendants contend that in order to maintain an independent judiciary, judges' hiring decisions should not be chilled by potential liability arising from employment disputes. The Supreme Court has rejected this argument, concluding that although "there is considerable force in this analysis, ... it in no way serves to distinguish judges from other public officials who hire and fire subordinates." *Forrester,* 484 U.S. at 229–30, 108 S.Ct. at 545.

Third, defendants rely on *New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1302 (9th Cir.1989), where the Ninth Circuit held that a judge was entitled to judicial immunity for his appointment of a receiver to oversee business assets in a pending case. Relying on *New Alaska,* defendants argue that the decision to appoint a court commissioner is essentially identical to the decision to appoint a receiver. According to defendants, the only distinction is that a court commissioner may be responsible for certain matters in a number of cases while a receiver oversees such matters in a single case. This argument takes the *New Alaska* holding out of context. The issue in *New Alaska* was whether a judge could be derivatively liable for the actions of the receiver he appointed concerning the disposition of business assets in a marital dissolution action. *Id.* at 1302. The *New Alaska* court found

that because the receiver was assisting the court with a matter in a pending case, the appointing judge was entitled to absolute immunity. *Id.* The *New Alaska* court did not consider judicial immunity in the context of an employment decision, and its ruling cannot be applied here.

Nonetheless, the *New Alaska* decision is useful here because the Ninth Circuit identified several factors a court should consider in determining whether particular conduct of a judicial officer is judicial in nature. Those factors include whether: "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately after a confrontation with the judge in his or her official capacity." *Id.*

Consideration of the *New Alaska* factors supports the conclusion that the decision to terminate plaintiff was not a judicial act. First, the decision to terminate plaintiff was an administrative decision, rather than a judicial act, because it involved the termination of an employee, and not a decision in a matter pending before the court. Second, although it is unclear whether the vote to terminate plaintiff took place in a judge's chambers, it did not occur while the court was in session. *See Forrester,* 484 U.S. at 219, 108 S.Ct. at 538–40. Third, the controversy centered, not on a case, but on plaintiff's efforts to seek the same judicial office as then-Commissioner Wojcik in the April, 1996 election. Finally, according to the allegations of the complaint, the decision to terminate plaintiff was a response to his campaign for judicial office and had nothing to do with plaintiff's performance or decision in a particular case. Thus, consideration of the factors identified by the Ninth Circuit in *New Alaska,* also leads to the conclusion that the defendant judges are not entitled to judicial immunity.

Finally, defendants assert that judicial immunity is not limited to case-specific decisions. Defendants point to the fact that judges have absolute immunity in determining the qualifications of attorneys to practice law, a task, according to defendants, that is not too different from hiring and firing court commissioners. *See Rosenthal v. Justices of the Supreme Court of California,* 910 F.2d 561, (9th Cir.1988). Determining the qualifications of attorneys for admission to the bar, however, differs significantly from hiring a subordinate judicial employee. As the Supreme Court stated in *Forrester,* "legislative, rather than judicial immunity, furnish[es] the appropriate standard ... when promulgating the Bar Code." *Id.* at 228, 108 S.Ct. at 545 (citing *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 734–37, 100 S.Ct. 1967, 1975–77, 64 L.Ed.2d 641 (1980)). When judges oversee the qualifications of attorneys, they "[engage] in an act of rule-making [rather than] adjudication." *Id.* at 228, 108 S.Ct. at 545. Hiring or firing court employees is not a rule-making function, and cases dealing with the supervision or qualifications of attorneys are therefore of no help to defendants.

In short, Judge Walker and Judge Wojcik are not entitled to absolute judicial immunity because their alleged actions in voting to terminate plaintiff, thereby allegedly forcing plaintiff to retire, were administrative rather than judicial in nature.

### b. Judges Walker and Wojcik Acted in the Complete Absence of Jurisdiction

■ Because the defendant judges are not entitled to judicial immunity under the first prong of the judicial immunity test, the Court need not consider whether defendants acted in the complete absence of all jurisdiction. Nonetheless, in an abundance of caution, the Court addresses the second prong of the test and finds that the individual defendants acted without jurisdiction to do so when they allegedly voted to terminate plaintiff. *See Mireles,* 502 U.S. at 13–15, 112 S.Ct. at 289.

■ By allegedly voting to terminate plaintiff on April 4, 1996, nineteen days before then-Commissioner Wojcik took his oath of office as a judge, both defendants acted beyond the scope of their authority. Plaintiff held office at the pleasure of a majority of the judges of Riverside County. *See* Cal. Gov't Code §§ 72190, 74135.6. Consequently, then-Commissioner Wojcik lacked authority to vote to terminate plaintiff because he

was not yet officially a municipal court judge at the time of the vote. Likewise, Judge Walker had no authority to terminate plaintiff solely on his own vote because plaintiff served at the pleasure of a majority of the judges of the municipal courts in Riverside County.

In *Mireles,* the Supreme Court explained that by allegedly ordering police officers to bring a public defender before him, Judge Mireles acted in excess of his authority. *Id.* That act was not in excess of Judge Mireles' jurisdiction, however, because it was "taken in the very aid of the judge's jurisdiction over a matter before him[.]" *Id.* By contrast, Judges Walker and Wojcik's alleged actions in voting to terminate plaintiff were not taken in aid of their jurisdiction over matters pending before them. Because the individual defendants' alleged actions were outside the scope of their authority, and because those actions were not taken in aid of their jurisdiction in matters pending before them, defendants alleged actions were taken in the complete absence of jurisdiction.[2] Accordingly, Judges Walker and Wojcik are not entitled to absolute judicial immunity.

### 3. Political Immunity

Judge Walker and Judge Wojcik's assertion that they are entitled to political immunity raises issues concerning First Amendment protection of both political affiliation and free speech. In *O'Hare v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), the Supreme Court reiterated the separate tests for protection of political affiliation and free speech, but noted that both tests will typically require case-by-case analysis in order to determine the reasonableness of the government action. Id. at ———-———, 116 S.Ct. at 2357-58.

Where a government employer has allegedly terminated a public employee on the basis of the employee's political affiliation, "the question is whether the hiring au-

thority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at ——, 116 S.Ct. at 2357 (quoting *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980)); *see also Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

On the other hand, where an employer takes adverse action against a public employee in response to the employee's exercise of his or her right of free speech, the controlling cases "call for a different, though related inquiry," and courts apply the balancing test from *Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under *Pickering,* the court must strike a balance "between the interests of the [employee], as a citizen, in commenting upon matters of public concern, and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* at 568, 88 S.Ct. at 1734–35; *see also Board of County Commissioners v. Umbehr,* 518 U.S. 668, ——, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996) (reaffirming *Pickering* test). The threshold question under *Pickering* is "whether the speech [in question] may be fairly characterized as constituting speech on a matter of public concern." *Thomas,* 881 F.2d at 830 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983)).

In applying the *Pickering* balancing test, a court must consider:

whether the speech (i) impairs discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs the routine operation of the office.

---

2. Defendants contend that they did not act without jurisdiction when they voted to terminate plaintiff because plaintiff elected to retire. Plaintiff alleges, however, that Judge Hinman informed him of the vote and told him that he could appear before the same judges for a hearing, but that "it would not make any difference because the outcome would be the same." Com-

plaint, ¶ 19. Taking the alleged facts as true, plaintiff could reasonably have believed that he would be fired if he did not retire. *See Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir. 1987) (action for constructive termination is based upon reasonable perceptions of plaintiff, not intent of defendants).

*Hyland v. Wonder,* 972 F.2d 1129, 1139 (9th Cir.1992). However, "when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices." *Id.* at 1137; *see also Weisbuch v. County of Los Angeles et al.,* 119 F.3d 778 (9th Cir.1997) (First Amendment protects employee speech on matters of public concern, but does not protect speech that only concerns internal office affairs) Furthermore, the employee must prove that the speech in question was not only "constitutionally protected," but that "it was a substantial or motivating factor in the termination." *Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2347.

After explaining the two tests concerning public employees' First Amendment rights to political affiliation and free speech, respectively, the Supreme Court went on to explain in *O'Hare* that "where specific instances of the employee's speech or expression, which require balancing in the *Pickering* context, are intermixed with a political affiliation requirement," it is inappropriate to apply the "raw test of political affiliation," and "the balancing *Pickering* mandates will be inevitable." *Id.* at ——, 116 S.Ct. at 2358.

The Ninth Circuit implicitly reached the same conclusion in *Thomas v. Carpenter,* 881 F.2d 828 (9th Cir.1989). There, the plaintiff, a sheriff's lieutenant, brought a civil rights action against the Sheriff after the Sheriff banned him from attending departmental staff meetings and policy review sessions because he had challenged the Sheriff in a nonpartisan election. *Id.* at 829. Applying the *Pickering* test for protection of free speech, the Ninth Circuit explained that *Elrod* and *Branti,* "were not directly on point because they address political patronage dismissals based upon party loyalty. The election between Thomas and Carpenter, however, was nonpartisan." *Thomas,* 881 F.2d at 831. The *Thomas* court did note, however, that "the government interest requirement in the affiliation cases is also relevant in the employee speech cases." *Id.* Here, as in *Thomas,* the election between then-Commissioner Wojcik and plaintiff was non-partisan and apparently concerned office loyalty rather than political loyalty.

Defendants point to several decisions holding that political loyalty in the generic sense, like political party affiliation, "is a valid justification for political patronage dismissals." *Green v. Henley,* 924 F.2d 185, 187 (10th Cir.1991); *see also Soelter v. King County,* 931 F.Supp. 741, 746 (E.D.Wash. 1996). In other words, "[p]olitical affiliation refers to commonality of political purpose and support, not solely political party membership." *Green,* 924 F.2d at 187 (citing *Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir.1990)). In both *Green* and *Soelter,* the courts applied the "raw test" of political affiliation. The Supreme Court's decision in *O'Hare* clarifies, however, that where a public employee's right to free speech or expression is at issue, application of the pure political affiliation test is inappropriate. Moreover, the Ninth Circuit explicitly held in *Thomas* that the *Pickering* balancing test applies where a government employer has allegedly taken adverse action against a public employee in response to the employee's unsuccessful campaign in a non-partisan election. *Thomas,* 881 F.2d at 830. Accordingly, although *Green* and *Soelter* are useful for purposes of assessing the nature of the government's interest in non-partisan, political loyalty, this Court is bound to apply the hybrid *Pickering* test described in *O'Hare* and *Thomas.*

As in *Green* and *Soelter,* the Sixth Circuit in *Mumford v. Basinski,* 105 F.3d 264 (6th Cir.1997), recently applied the pure political affiliation test where a government employer allegedly violated a public employee's First Amendment rights by terminating him on the basis of political loyalty. In *Mumford,* however, the issues of political-party affiliation and non-partisan, political loyalty were intertwined. Mumford, a member of the Democratic Party, served as a referee for the domestic relations court in Ohio. *Mumford,* 105 F.3d at 266. In 1988, the plaintiff helped the incumbent judge, a Democrat, with his reelection bid against a Republican challenger, the defendant. *Id.* at 266. Upon winning the election, the defendant wrote plaintiff a letter stating that plaintiff's employment with the court would be terminated when defendant took office. *Id.*

Applying a modified version of the *Branti* test, the Sixth Circuit sought to determine "whether the hiring authority [could] demonstrate that party affiliation [was] an appropriate requirement for the effective performance of the public office involved." *Id.* at 270. The court concluded that the duties of a court referee are inherently political in character because they "entail a relationship of confidence" between the court referee and the judges whom the referee serves. *Id.* at 272. Accordingly, the court found the position of court referee fell into three of four categories of public occupations characterized as "political" and, therefore, was subject to patronage consideration under First Amendment jurisprudence. Despite the clear involvement of political-party politics in the elections in the Ohio court system, the court did not explain the role of party politics in its analysis.

█ Although Mumford is factually similar to the instant case in many respects, the decision there is not in keeping with the framework established in *O'Hare* and *Thomas,* and this Court is bound to follow Supreme Court and Ninth Circuit precedent. Accordingly, the Court must apply the *Pickering* balancing test, as modified in *O'Hare,* rather than the pure political affiliation test set forth in the *Elrod* and *Branti* line of cases. Extrapolating from *O'Hare,* where "specific instances of the employee's speech and expressions are intermixed with a political affiliation requirement," the *Pickering* balancing test applies and the inquiry is not limited to whether affiliation, or loyalty is "an appropriate requirement for the effective performance of the public office involved." *O'Hare,* 518 U.S. at ——–——, 116 S.Ct. at 2357–58.

█ Having explained the proper test to apply to determine whether Judge Walker and Judge Wojcik are entitled to political immunity, the Court concludes that it lacks sufficient factual information to determine, on the limited record before it, whether the government's interest in court efficiency and non-partisan, political loyalty outweighs plaintiff's First Amendment rights. *See Thomas,* 881 F.2d at 831–32 (whether Thomas was in position to thwart goals of in-party and impede "effective implementation of general departmental policy," could not be deter-

mined on motion to dismiss); *Weisbuch,* 119 F.3d 778, ("Because factual development is often necessary before the *Pickering* factors can be applied, balancing typically cannot be performed on a 12(b)(6) motion.").

## IV.

### *Conclusion*

For the foregoing reasons the County of Riverside's motion to dismiss is **GRANTED.** Judge Walker and Judge Wojcik's motion to dismiss on the basis of absolute judicial immunity is **DENIED.** Judge Walker and Judge Wojcik's motion to dismiss on grounds of political immunity is **DENIED** without prejudice to defendants' right to raise the issue on a motion for summary judgment.

**IT IS SO ORDERED.**